## 10 Civ-3774 – (PAC)-- Kaur v. The Bank of Tokyo-Mitsubishi UFJ, Ltd.

02/23/2011 - ENDORSEMENT: The request for a protective order is DENIED. Plaintiff may inquire about alleged sexual harassment or sexually harassing comments made by plaintiffs supervisor within 18 months of June, 2009 (i.e all of 2008 and the 1st 6 months of 2009). Pregnancy discrimination is a form of sex discrimination and there questions may lead to the discovery of admissible evidence. So Ordered.

# SEYFARTH
## ATTORNEYS SHAW LLP

Writer's direct phone
212-218-3351

Writer's e-mail
bmurphy@seyfarth.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 23 FEB 2011
```

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

February 18, 2011

*[Handwritten memo endorsement, dated February 23, 2011:]* The request for a protective order is DENIED. Plaintiff may inquire about alleged sexual harassment or sexually harassing comments made by plaintiff's supervisor within 18 months of June 1, 2009 (i.e. Aug 2008 and the last 6 months of 2009). Pregnancy discrimination is a form of sex discrimination and the question may lead to the discovery of admissible evidence. So ordered. Paul Crotty USDJ

**VIA HAND DELIVERY**

Hon. Paul A. Crotty
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Chambers 735
New York, New York 10007

Re:  Kaur v. The Bank of Tokyo-Mitsubishi UFJ, Ltd.
     Case No. 10-CV-3774 (PAC)

Dear Judge Crotty:

As the Court is aware, we represent Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") in the above-referenced matter. We write pursuant to the Court's direction at the February 9, 2011 Conference requesting that the parties submit letter-briefs addressing Plaintiff Gurpreet Kaur's ("Plaintiff") intention to question witnesses during depositions concerning irrelevant alleged sexual harassment or sexually harassing comments allegedly made by Plaintiff's supervisor, despite the fact that this action involves only claims for pregnancy discrimination and that Plaintiff admits that she was never subjected to any sexual harassment, that she never heard any such comments, and that she is not alleging any such claims as part of her lawsuit. As established by the applicable case law, BTMU respectfully requests that the Court prohibit Plaintiff from questioning Frank Santora, Megan Doherty, Susan Soruco, Calvin Vinal, Seth Giovanetti, and Beth Hoerle about any allegations of sexual harassment and further, that the Court prohibit Plaintiff from submitting any affidavits or otherwise presenting evidence of sexual harassment.

## BACKGROUND

Plaintiff was hired as an Assistant Vice President in BTMU's Operational Risk Management Department on or about November 19, 2007. Frank Santora, Vice President and Manager of Operational Risk Management, made the decision to create the AVP role and hire Plaintiff into that role following an unsuccessful six-month search for a more senior Vice President candidate. Mr. Santora's hope was to slowly increase Plaintiff's responsibilities with the goal of eventually promoting her to Vice President to fill the position that he originally sought to staff.

*[Side margin:]* BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  HOUSTON  BOSTON  ATLANTA

*[Stamp:]* MEMO ENDORSED

THIS LETTERHEAD IS PRINTED ON RECYCLED STOCK



Hon. Paul A. Crotty
February 18, 2011
Page 2

Beginning in January 2009, Mr. Santora increased Ms. Kaur's supervisory responsibilities. However, Plaintiff failed to perform certain tasks effectively and while she had been performing the AVP responsibilities satisfactorily, she was not meeting the heightened responsibilities needed, which Mr. Santora documented beginning in March 2009. In April 2009, after Mr. Santora had already begun documenting these issues, Plaintiff informed Mr. Santora that she was pregnant. In June 2009, Mr. Santora went on a two-week vacation during which he left Plaintiff in charge of the Department. During that time, Plaintiff failed to ensure that numerous tasks were appropriately performed, and it became clear to Mr. Santora and other BTMU personnel that the Department could no longer suffice with an AVP position and needed to replace it with the prior VP role. Given Plaintiff's performance, she was not qualified for the VP role, and when the position was restructured back to a VP role, her employment was terminated.

### PLAINTIFF'S COMPLAINT AND DEPOSITION TESTIMONY

In her Complaint, Plaintiff contends that her employment was discriminatorily terminated based solely on her pregnancy. Plaintiff advances her pregnancy discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, N.Y. EXEC. LAW § 296(a)(1), and the New York City Administrative Code, N.Y.C. ADMIN. § 8-107(1). Plaintiff does not allege claims for discrimination on any other basis, nor, importantly, does Plaintiff allege any claims for sexual harassment. Likewise, in the Charge of Discrimination Plaintiff filed with the Equal Employment Opportunity Commission, Plaintiff limited her allegations solely to pregnancy discrimination.

At her deposition on February 3, 2011, Plaintiff confirmed that her allegations in this matter are confined to claims for pregnancy discrimination. Specifically, Plaintiff repeatedly and unequivocally confirmed that at no time during her employment was she subject to sexual harassment, and further, that she did not witness nor was she aware of any BTMU employee perpetrating any sexual harassment:

> Q. Mr. Santora never made any sexually inappropriate comments to you, correct?
>
> A. No.
>
> Q. Am I correct?
>
> A. Yes.
>
> Q. Just to be clear.
>
> A. Right.
>
> Q. He never made any sexually inappropriate comments to you, correct?
>
> A. No.



Hon. Paul A. Crotty
February 18, 2011
Page 3

> Q.   He did not make any? Sorry.
>
> A.   He did not make any such comments to me.
>
> Q.   Are you aware of him making any sexually inappropriate comments to anyone else that you heard during your employment at Bank of Tokyo?
>
> A.   No, I don't.

(Kaur Tr. 126:14-127:14).

### THE COURT SHOULD PROHIBIT PLAINTIFF FROM QUESTIONING WITNESSES CONCERNING, OR PRESENTING EVIDENCE OF, SEXUAL HARASSMENT

Despite the fact that Plaintiff's claims in this matter are limited to pregnancy discrimination, and despite the fact that Plaintiff has admitted that she was not subject to nor did she witness any sexually harassing behavior during her employment, counsel to Plaintiff has indicated that he intends to question some or all of the remaining witnesses concerning allegations of sexual harassment. Specifically, Plaintiff's counsel has expressed his intent to question Ms. Doherty, Ms. Soruco and Mr. Vinal, (all of whom are former BTMU employees and former colleagues of Plaintiff that worked under the direct or indirect supervision of Mr. Santora), Mr. Giovanetti (who was hired after Plaintiff's termination as a Vice President), and Ms. Hoerle (a current Vice President in BTMU's Human Resources Department).[1] Further, counsel to Plaintiff has already produced an affidavit from Mr. Giovanetti that that references alleged conduct of Mr. Santora that he and counsel to Plaintiff describe as sexually harassing. Notably, Mr. Giovanetti was hired after Plaintiff was terminated.

It is clear that Plaintiff intends to engage in character assassination of Mr. Santora despite it having nothing to do with Plaintiff or her claims. For reasons aside from this improper motive, BTMU respectfully submits that Plaintiff should be prohibited from questioning witnesses concerning allegations of sexual harassment and should be prevented from offering any evidence of sexual harassment in this pregnancy discrimination case.

### A.   Evidence of Sexual Harassment is Not Relevant in a Pregnancy Discrimination Case Nor is it Likely to Lead to the Discovery of Admissible Evidence

Pursuant to the Federal Rules of Civil Procedure, unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

---

[1]   Plaintiff also deposed two current BTMU employees who were co-workers of Plaintiff. Plaintiff's counsel did not question them concerning any alleged sexual harassment or related comments.



FED. R. CIV. P. 26(b)(1) (emphasis added). Relevant information is, in turn, defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." FED. R. EVID. 401. The courts of this Circuit have repeatedly refused to permit discovery concerning claims of discrimination or harassment other than the type of discrimination alleged by the plaintiff as irrelevant and an improper abuse of discovery.

In Bolia v. Mercury Print Productions, Inc., for example, the Plaintiff advanced claims for age and disability discrimination relative to the termination of his employment. 2004 WL 2526407, at *1 (W.D.N.Y. Oct. 28, 2004). The employer moved for a protective order prohibiting "during discovery the use of or reference to discrimination claims other than age and disability discrimination claims." Id. The Court noted that "[o]ther claims of discrimination against a defendant are discoverable [only] if limited to the same form of discrimination, if limited to the same department or agency where plaintiff worked, and if limited to a reasonable time before and after the discrimination complained of." Id. (quoting Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002)). The Court therefore held that the plaintiff "should not be entitled to general discovery relating to discrimination claims of a type other than age or disability, the particular claims at issue in this case." Id. at *2.[2]

Likewise, in Olle v. Colubia Univ., the Court opined on the relevance of a sex and age discrimination plaintiff's evidence concerning survey responses about race and sexual orientation discrimination in deciding an employer's summary judgment motion. See 332 F. Supp. 2d 599, 614 (S.D.N.Y. 2004). The Court found such evidence entirely irrelevant as "they relate to allege race-based discrimination or sexual orientation discrimination, and are not relevant to Olle's claims of sex- and age-based discrimination." Id.

In Perez v. Consolidated Edison Co., a race discrimination plaintiff objected to a Magistrate Judge's Report and Recommendation denying him discovery pertaining to ConEd's investigation of an unrelated sexual harassment complaint. 2003 WL 22586492, at *1 (S.D.N.Y. Nov. 7, 2003). The plaintiff contended that the discovery was relevant because the alleged harassment was perpetrated against a racial minority and therefore "had discrimination [overtones] because of color implications." Id. at *2. The Court rejected the plaintiff's claim of relevancy outright, adopting the Magistrate Judge's Report and holding that "the implication of [plaintiff's] argument is that any complaint - and every document in the accompanying investigative file - made by a minority is relevant to claims of racial discrimination, regardless of whether those complaints have anything to do with race." Id. (emphasis in original).

Numerous other courts have reached the identical conclusion, holding that complaints and information relating to acts of discrimination and harassment other than that alleged by the plaintiff

---

[2] The Court did ultimately permit limited discovery into allegations of other types of discrimination, solely because an officer of the defendant had previously testified that he had never been the subject of a complaint of discrimination but the Court was presented with documents demonstrating that he had. See id. at *2-3. The Court therefore held that the discovery could be sought for impeachment purposes, tellingly stating, however, that "[i]f relevance were the sole basis on which Bolia sought this additional discovery, I would deny the motion." Id. at *2. Here, neither Mr. Santora nor any other witness has testified about other complaints of discrimination or harassment so there can be no impeachment purpose for which Plaintiff seeks discovery of sexual harassment allegations.



are irrelevant. See Murphy v. Bd. of Educ. of Rochester, 273 F. Supp. 2d 292, 302 (W.D.N.Y. 2003) (observing that allegations of discrimination against women and blacks was not relevant to white male plaintiff's claim and granting summary judgment); Rivera v. Baccarat, Inc., 1997 WL 7778877, at *2 (S.D.N.Y. Dec. 15, 1997) (concluding that purported gender bias or sexual harassment was irrelevant to claims of national origin and age discrimination and, thus, inadmissible); see also Kelly v. Boeing Petroleum Servs., 61 F.3d 350, 358 (5th Cir. 1995) (affirming the district court's conclusion that acts of unrelated discrimination were irrelevant to the plaintiff's claims); Pleasants v. Allbough, 208 F.R.D. 7, 15 (D.D.C. 2002) (holding that proper scope of discovery regarding other complaints of discrimination is limited in time and limited to those involving the same type of discrimination alleged in the pending lawsuit); Simonetti v. Runyon, 2000 WL 1133066, at *6 (D.N.J. Aug. 7, 2000) ("[P]laintiff may not use evidence of one type of discrimination to prove discrimination of another type.").

Still further and also instructive, other courts considering whether a plaintiff has exhausted his administrative prerequisites to filing suit have repeatedly found that other types of discrimination not included in an EEOC Charge - even discrimination against that plaintiff - are not "reasonably related," much less relevant, to the plaintiff's other discrimination claims. See, e.g., Crespo v. N.Y.C.T.A., 2002 WL 398805 (E.D.N.Y. Jan. 7, 2002) (dismissing harassment claims of a plaintiff where she included only race and gender-based discrimination claims in her EEOC Charge and holding that harassment claims against the plaintiff were not "reasonably related" to race and gender claims); Ghose v. Centurey 21, Inc., 108 F. Supp. 2d 373, 376 (S.D.N.Y. 2000) (hostile work environment claims not reasonably related to race and national origin discrimination claims); Eaton v. American Media Ops., Inc., 1997 WL 7670, at *2 (S.D.N.Y. Jan. 9, 1997) (same). Here, Plaintiff does not even allege that she was personally subjected to any harassment, as the plaintiffs in the aforementioned cases did, rendering any suggestion that allegations of harassment by other employees are reasonably related or even relevant to her claims even less plausible.

The cases in which courts have permitted discrimination plaintiffs to explore complaints of other types of discrimination and harassment differ markedly than the facts here and, in fact, counsel in favor of the relief sought by BTMU. For instance, in Perry v. Ethan Allen, Inc., the Second Circuit reviewed a District Court's ruling on a motion in limine that excluded evidence of harassment not witnessed by the plaintiff. See 115 F.3d 143 (2d Cir. 1997). The Second Circuit found this to be in error because the plaintiff's claim was one for harassment and thus, "evidence of the harassment of others (even if not known to the plaintiff), [was] relevant to the issue of whether there was a pervasive hostile environment." Id. at 146. Other courts permitting discovery into such evidence have similarly relied on the fact that allegations of sexual harassment may be relevant to amplify a plaintiff's own allegations of a subjectively or objectively hostile work environment. See, e.g., Chapple v. Fahnestock & Co., 2010 WL 3118638 (E.D.N.Y. Aug. 5, 2010) (permitting evidence of other sexual harassment complaints against employer because the plaintiff was advancing a sexual harassment claim and evidence of other harassment was therefore relevant to whether the environment was hostile as a whole); Abdus-Sabar v. Port Auth., 2001 WL 1111984, at *2 (S.D.N.Y. Sept. 20, 2001) ("Several courts have held that in an action under Title VII of the Civil Rights Act [for sexual harassment], evidence of discrimination against others is relevant to establishing a generally hostile work environment.").



The logic of these cases is clear: discovery related to discrimination and harassment other than the type alleged by a plaintiff is irrelevant in that such other discrimination or harassment does not tend to prove or disprove whether the plaintiff seeking discovery was, in fact, subject to discrimination. The inquiry in a discrimination case is individual in nature. In instances where a court has permitted discovery into allegations of sexual harassment, it is only where the plaintiff is alleging sexual harassment and only because such discovery is relevant to whether the environment as a whole was hostile, which is an element of that claim.

In the present case, Plaintiff's attempt to seek irrelevant discovery concerning allegations of sexual harassment have no bearing on whether Mr. Santora discriminated against Plaintiff because of her pregnancy.[3] Plaintiff admits that she was never harassed by Mr. Santora, nor would making sexually inappropriate jokes or comments – even if any such comments had been made – reveal any pregnancy bias. Plaintiff's intended discovery has no bearing on her claims in this case, and can be intended solely for the purpose of exposing Mr. Santora to harassment or character assassination. See, e.g., Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co., 2008 WL 622810, at *5 (S.D.N.Y. Mar. 7, 2008) (noting that a court has an obligation "to ensure that discovery is not misused as a tool for oppression or harassment."); Bouchard v. New York Archdiocese, 2007 WL 2728666, at *3 (S.D.N.Y. Sept. 19, 2007) (same).

### B. Evidence of Discrimination Other Than Pregnancy Discrimination or Sexual Harassment is Not Relevant to Any Claim for Punitive Damages

Plaintiff suggested during the recent conference that discovery into claims of sexual harassment against Mr. Santora is relevant to her claim for punitive damages. Specifically, Plaintiff appears to argue that if Mr. Santora was the subject of complaints of sexual harassment and BTMU did not terminate his employment in response to such complaints, punitive damages should be awarded in her favor because such a failure would allegedly demonstrate "evil motive or intent" or "reckless or callous indifference" to the law. See Faria v. Instructional Sys., Inc., 259 F.3d 91, 101-02 (2d Cir. 2001) (noting that the New York State Human Rights Law does not permit punitive damages, but that the standard for assessing punitive damages under Title VII and the New York City Human Rights Law is the same). This argument is fundamentally flawed and should be rejected for multiple reasons.

To begin, evidence that Mr. Santora allegedly engaged in sexual harassment and that BTMU allegedly failed to take appropriate remedial action does not satisfy the standard for the imposition of punitive damages. For an award of punitive damages, a plaintiff must establish that the defendant "not only intentionally discriminate[d] but [did] so in the face of a perceived risk that these actions [were] prohibited by law." Tse v. UBS Fin. Svcs., Inc., 568 F. Supp. 2d 274, 309 (S.D.N.Y. 2008). While Plaintiff could arguably make such a demonstration with regard to her allegations of pregnancy discrimination (assuming that Plaintiff establishes that she was subjected to pregnancy discrimination, which BTMU wholly denies and which the evidence does not

---

[3] With reference to Rule 401 of the Federal Rules of Evidence, whether Mr. Santora was previously the subject of a complaint of harassment does not have "any tendency to make the existence of any fact [regarding pregnancy discrimination] more probable or less probable than it would be without the evidence." FED. R. EVID. 401.



Hon. Paul A. Crotty
February 18, 2011
Page 7

support), the standard clearly requires that the "act" upon which punitive damages are awarded be the same as the "act" upon which liability is premised. Stated differently, even if Plaintiff were permitted the discovery she seeks, there would be no basis for punitive damages because there would be no evidence that BTMU was aware of any discriminatory animus towards pregnant women that was ignored. That Plaintiff admits that she was never subjected to sexual harassment only confirms this disconnect.

Moreover, Plaintiff cannot offer any case law that supports her theory.[4] Indeed, this is not surprising, because such a view would serve as nothing more than an end-run around the consistent case law precluding such irrelevant discovery.

At bottom, Plaintiff has no good faith basis for seeking discovery concerning alleged sexual harassment, which Plaintiff admits that she never witnessed nor was aware of, was never directed at her, and which she does assert as a claimed basis of discrimination. Plaintiff should therefore be precluded from pursuing this baseless line of questioning and should be precluded from offering any affidavits or other evidence concerning allegations of sexual harassment. Thank you for the Court's consideration of this request. Should the Court have any questions, please do not hesitate to contact the undersigned.

Respectfully submitted,

SEYFARTH SHAW LLP

Brian Murphy

cc: David Zatuchni, Esq. (*via email*)
Dov Kesselman, Esq.

---

[4] We were unable to locate any Second Circuit case supporting Plaintiff's apparent argument that punitive damages may be imposed on an employer for failing to take remedial action with respect to an employee that allegedly harassed an employee other than the plaintiff.

13124844v.3

# zatuchni & associates

New York          Newark

Zatuchni & Associates, LLC
1 West Street
Suite 100
New York, NY 1004
Tel  212 785.8980
Fax  212 785.8981
www.zatuchniassociates.com

Writer's Email
davidz@zatuchniassociates.com

February 18, 2011

**Via Facsimile (212-805-6304)**

The Honorable Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    **Gurpreet Kaur v. The Bank of Tokyo-Mitsubishi UFJ, Ltd.**
           **Case No.: 10-CV-3774 (PAC)**

Dear Judge Crotty:

    This firm represents Plaintiff Gurpreet Kaur in the above-referenced matter.

    Ms. Kaur, a former employee of the Bank of Tokyo, alleges in this lawsuit that she was terminated by her Manager, Frank Santora, because of her pregnancy.

    On February 4, 2011, undersigned conducted the deposition of Mr. Santora. Undersigned asked Mr. Santora whether he was the subject of any complaints of sexual harassment or gender discrimination by other female employees of the Bank of Tokyo. Counsel for Defendant instructed Mr. Santora not to answer that question with respect to complaints of sexual harassment.

    On February 9, 2011, the parties had a case management conference with the Court. Your Honor directed the parties to submit a brief on the issue of whether complaints of other employees

# zatuchni & associates

New York          Newark

The Honorable Paul A. Crotty
February 18, 2011
Page 2 of 5

alleging sexual harassment made against Mr. Santora are discoverable in this matter. Please accept this letter brief in lieu of more formal papers.

## ARGUMENT

### I. THE SECOND CIRCUIT HAS HELD THAT ACTS OF SEXUAL HARASSMENT AGAINST OTHER FEMALE EMPLOYEES BY THE DECISION-MAKER IN A SEX DISCRIMINATION CASE ARE DISCOVERABLE

In the instant matter, Ms. Kaur has brought a pregnancy discrimination claim against Defendant pursuant to Title VII of the Civil Rights Act of 1964, as well as the New York State Human Rights Law and the New York City Human Rights Law.

It is well-established that pregnancy discrimination is considered a form of "sex discrimination" under Title VII. "The Pregnancy Discrimination Act amends Title VII's definition of discrimination 'because of sex' to include discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" Saks v. Franklin Covey Co., 316 F.3d 337, 343 (2nd Cir. 2003); see also Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C., 462 U.S. 669, 684, 103 S.Ct. 2622, 2631 (1983) ("The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, **discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex**"). (emphasis added)

In Gregory v. Daly, 243 F.3d 687 (2nd Cir. 2001), the Second Circuit held that "sex –based" hostility in the form of sexual harassment or a hostile work environment is relevant to a sex discrimination termination claim:

# zatuchni & associates

New York                Newark

The Honorable Paul A. Crotty
February 18, 2011
Page 3 of 5

> [W]e have long recognized that 'actions or remarks made by decision makers that could be viewed as reflecting a discriminatory animus' may 'give rise to an inference of discriminatory motive.' (citing Chertkova v. Connecticut General Life Insurance Co., 92 F.3d 81 (2nd Cir. 1996)... **Sex-based hostility to a woman's continued presence in the workplace, or to particular roles within it, does not necessarily stop at the doctrinal boundary between creation of a hostile work environment and imposition of more tangible employment injuries.** Id. at 697. (emphasis added)

The Gregory court explicitly held that "**Because hostility against women underlies decisions to discharge or to refuse to hire women because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination.**" Id. at 697. (emphasis added)

In reaching this conclusion, the Gregory court cited to and relied on the Ninth Circuit's opinion in EEOC v. Farmer Bros. Co., 31 F.3d 891 (9th Cir. 1994). In Farmer Bros., the defendant argued that testimony regarding sexual harassment directed at other employees by one of the plaintiff's supervisors should have been excluded because it was not relevant to prove the plaintiff's gender discrimination claim. The Court disagreed:

> [Defendant's] contention that evidence of sexual harassment can never be relevant to a claim of discriminatory discharge on the basis of gender is without merit...Under Rule 401, the district court's admission of evidence regarding [the supervisor's] sexual harassment and his disparaging remarks about women was proper if the evidence made it 'more or less probable' that [plaintiff] was discharged or not rehired because of her gender. Id. at 897.

...

> **Because hostility against women underlies decisions to discharge or to refuse to hire women because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination**...The finder of fact, presented with evidence of sexual harassment, will have to determine whether and to what extent the

# zatuchni & associates

New York      Newark

The Honorable Paul A. Crotty
February 18, 2011
Page 4 of 5

employer's or supervisor's harassing conduct is probative of his intent to discriminate against women in his employment decisions. In order to make such a determination, however, the factfinder must first have access to the evidence. Id. at 898. (emphasis added)

Other district courts within the Second Circuit have likewise followed this reasoning. See Kanios v. UST, Inc., 2005 WL 3579161 (D.Conn. 2005) at *6 (citing to Chertkova, Farmer Bros. Co. and Gregory and stating that evidence of a hostile work environment is relevant to the plaintiff's gender discrimination claim); Zubulake v. UBS Warburg LLC, 382 F.Supp.2d 536, 544-546 (S.D.N.Y. 2005) (plaintiff in gender discrimination action permitted to introduce evidence of acts of sexual harassment directed at another employee by one of the defendant's supervisors).

Pursuant to the above-cited case law, evidence of sexual harassment directed against other female employees by Mr. Santora, the decision-maker in this case, is both relevant and discoverable in Ms. Kaur's sex discrimination claim based on her pregnancy under Title VII.

## II. THE SCOPE OF DISCOVERY IS BROAD, AND THE PARTIES HAVE ENTERED INTO A CONFIDENTIALITY AGREEMENT

"All that must be shown is that the discovery requested possibly might be relevant or is reasonably calculated to lead to the discovery of admissible evidence." Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376, 378 (S.D.N.Y. 1996)(internal citations omitted). "Moreover, the Court must bear in mind the Supreme Court's direction that civil discovery rules are to be construed liberally in Title VII cases in order to provide the plaintiff with 'broad access to employers' records.'" Id., citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989); see also Flanagan v. Travelers Ins. Co., 111 F.R.D. 42,

# zatuchni & associates

New York          Newark

The Honorable Paul A. Crotty
February 18, 2011
Page 5 of 5

46 (W.D.N.Y. 1986)("Fed.R.Civ.P. 26 is not to be interpreted so as to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case. This is particularly true in Title VII cases where the imposition of unnecessary discovery limitations is to be avoided")(internal citations omitted).

The discovery request at issue here is not overbroad or general. It is focused and directed solely at the decision-maker, Mr. Santora. Under the broad scope of discovery rules set forth above, there is no compelling basis to deny Plaintiff the right to know the extent and nature of any other sex-based types of discrimination or harassment engaged in by Mr. Santora.

Finally, it should be noted that Plaintiff did enter and is bound by a Confidentiality Agreement and Consent Order that has been signed by Your Honor, which should militate any concerns the Court may have that that this discoverable information would be used or disclosed outside the legitimate purposes of this litigation.

Respectfully submitted,

/s/

David Zatuchni, Esq.

cc:     Dov Kesselman, Esq. (via facsimile)